IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| PATRICK M. DEVINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15cv1361(JCC/JFA) |
| | ) | |
| PULTE HOME CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is now before the Court on a motion for judgment on the pleadings [Dkt. 9] filed by Defendant Pulte Home Corporation, as well as a motion for summary judgment [Dkt. 15] and a motion to strike affirmative defenses [Dkt. 5] filed by Plaintiff Patrick M. Devine. For the reasons laid out below, the Court grants Defendant's Motion of Judgment on the Pleadings, denies Plaintiff's motion for summary judgment, and denies Plaintiff's motion to strike.

## I. Background

When evaluating a motion for judgment on the pleadings, the Court applies the same standard as when evaluating a motion to dismiss under rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Court must read the complaint as a whole, construe the complaint in a light most favorable to the plaintiff, and accept the facts

alleged in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The following facts are taken from the complaint and the parties' briefs. Plaintiff Patrick M. Devine ("Plaintiff" or "Devine"), is the purchaser, current owner, and resident of a condominium located at 2211 Jefferson Davis Highway, unit 101, in Alexandria, Virginia. (Compl. [Dkt. 1-1], ¶ 5.) Defendant, Pulte Home Corporation ("Defendant" or "Pulte"), is a Michigan corporation engaged in the construction and sales of residential property including the development containing Plaintiff's current residence (the "Potomac Yard Development"). (*Id.* at ¶ 6.) Defendant conducts its business regarding sales in the Potomac Yard Development out of its office at 2400 Main Line Boulevard, Alexandria, Virginia. The Defendant advertised the condominiums at the Potomac Yard Development as "luxury" apartments. (*Id*. at ¶ 13.) Beginning in the fall of 2012, Plaintiff and his wife visited the Defendant's sales office and toured a "Model home unit" at 2309 Main Line Boulevard, Alexandria, Virginia. (*Id.* at ¶¶ 11, 12.) Several times, Plaintiff inquired about the availability of the model unit, and was advised that the model units would be the last units sold, and would likely not be on the market for a couple of years. (*Id.* at ¶ 14.) Plaintiff was unwilling to wait several years, and on November 4, 2012, he discussed purchase of similar unit,

preferably on Main Line Boulevard, with Defendant's sales agent Doug Richards. (*Id.* at ¶ 16.) Richards informed Plaintiff that there were no longer any units available on Main Line Boulevard, but that the next wave of construction included units on Jefferson Davis Highway (Route 1) one block west of Main Line Boulevard. (*Id.* at ¶ 17.) Although Plaintiff was initially uninterested in a unit on Route 1 due to concerns about traffic noise, Richards assured Plaintiff that the units on Route 1 would be of "airport quality" in blocking out traffic noise. (*Id.* at ¶¶ 18-20.) Richards also assured Plaintiff that if any of the other units in the Potomac Yard Development not located on Route 1 became unexpectedly available, Defendant would contact Plaintiff. (*Id.* at ¶ 21.) That same day, November 4, 2012, Plaintiff signed a contract to purchase a three bedroom condominium lower level unit to be constructed at 2211 Jefferson Davis Highway and gave Defendant a $10,000 deposit towards that unit. (*Id.* at ¶ 22.; Def.'s Mem. in Supp. [Dkt. 10] at 2.) Richards completed a job initiation order for construction with a promised delivery of "July/August 2013." (Compl. ¶ 23.)

On April 26, 2013 Richards sent Plaintiff an e-mail stating that a unit had become available on Mackenzie Avenue but that that unit would cost approximately an extra $80,000 above the price of the unit on Route 1. (*Id.* at ¶27.) Plaintiff responded on April 27 that he was unwilling to pay the higher

price, but was still concerned about the potential for road noise from Route 1. (*Id.* at ¶ 28.) On September 24, 2013 at 10 a.m., Plaintiff took a "final walk-through" of the condominium located at 2211 Jefferson Davis Highway. (*Id.* at ¶ 29.) Two hours later the same day, Plaintiff purchased the condominium located at 2211 Jefferson Davis Highway for $560,105. (*Id.* at ¶ 30.)

On September 28, 2013, Plaintiff and his wife moved into the unit at 2211 Jefferson Davis Highway, and began noticing that they could hear traffic noise and the conversations of passersby from Route 1 while in the condominium. (*Id.* at ¶¶ 31, 32.) The Plaintiff claims that the level of noise from Route 1 makes it difficult for him and his wife to sleep in either of the unit's upstairs bedrooms overlooking Route 1. (*Id.* at ¶ 33.) In late October 2013, Jon and Ann West moved into the unit directly above the Plaintiff's unit, and the Plaintiff and his wife began to hear noises from the upstairs apartment. (*Id.* at ¶¶ 34-35.) Plaintiff claims that from early November 2013 to the present, he hears someone walking on the floor above him every night at approximately 11 pm while he is in the master bedroom with the television turned on. (*Id.* at ¶ 36.)

In January, 2014, Plaintiff sent an e-mail message to Defendant's construction manager Marco Scarzella complaining

about noise issues inside the unit and the noise caused by traffic on Route 1. (*Id.* at ¶ 39.) On January 22, 2014, Scarzella responded, stating that Plaintiff's unite had been tested for sound and had passed its test, so no further action would be taken on Plaintiff's complaint. (*Id.* at ¶ 40.) in early September 2014, Lisa Hamlin, a warranty service manager for Defendant, performed a one-year inspection on Plaintiff's unit, at which time Plaintiff raised several concerns, including the noise from upstairs and Route 1. (*Id.* at ¶ 41.) After the one-year inspection, Hamlin sent Plaintiff a copy of a sound test indicating that the unit had passed the test. (*Id.* at ¶ 42.)

On September 23, 2015, Plaintiff filed this suit in Virginia's Circuit Court for the City of Alexandria. (Notice of Removal [Dkt. 1] ¶ 1.) On October 19, 2015, Defendant removed the case to this Court. (*Id.*) On October 20, 2015, Defendant filed their Answer to Plaintiff's complaint, asserting that Defendant had failed to state a claim upon which relief can be granted, and asserting the affirmative defenses of waiver, estoppel, the statute of limitations, the statute of frauds, a contractual exclusive remedy provision, the economic loss doctrine, contributory negligence, and assumption of the risk. (Answer [Dkt. 3], ¶¶ 53-60.) On October 30, 2015, Plaintiff filed a motion to strike Defendant's affirmative defenses of the

statute of limitations and the contractual exclusive remedy. (Pl.'s Mot. to Strike [Dkt. 5].) Plaintiff waived oral argument on the Motion to Strike, and Defendant filed its opposition on November 6, 2015. (Def.'s Opp'n. to Mot. to Strike [Dkt. 12].) On November 2, 2015, Defendant filed a motion entitled "Motion to Dismiss for Failure to State a Claim", in which Defendant actually requests a judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). (Pl.'s Mot. to Dismiss [Dkt. 9].) On November 20, 2015, Plaintiff filed what he titled a "Motion to Dismiss re: Defendant's Motion to Dismiss" [Dkt. 13] and a brief in support of that motion [Dkt. 14] which the Court takes to be Plaintiff's opposition to Defendant's Motion for Judgment on the Pleadings. Finally, Plaintiff also filed his "Cross Motion for Summary Judgment" [Dkt. 15] requesting summary judgment in his favor. On December 3, 2015, the Court heard oral arguments on Defendant's Motion for Judgment on the Pleadings and Plaintiff's Cross Motion for Summary Judgment. All three motions have therefore been fully briefed and argued, and are ripe for decision.

## II. Legal Standard

Defendant moves for judgment on the pleadings on the grounds that Plaintiff's complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(c).[1] A motion for judgment on the pleadings for failure to state a claim is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Edwards*, 178 F.3d at 243. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (citation omitted) (internal quotation marks omitted). "While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009). Therefore, a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Allegations of fraud must also meet the more stringent requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014). Rule

[1] Defendant also requests dismissal under Federal Rule of Civil Procedure 12(b)(6). However, as Defendant has already filed an answer in this case, they can no longer seek dismissal for failure to state a claim pursuant to Rule 12(b)(6), but may still move for judgment on the pleadings pursuant to Rule 12(c).

9(b) requires that when “alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake.” Fed. R. Civ. P. 9(b). Specifically, there must be allegations of fraudulent misrepresentations of fact. *Hamilton v. Boddie-Noell Enter., Inc.*, No. 2:14CV00051, 2015 WL 751492, at *2 (W.D. Va. Feb. 23, 2015) (citations omitted).

Plaintiff moves to strike the affirmative defenses of the statute of limitations and a contractual exclusive remedy provision from the Defendant’s Answer pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) allows the Court to strike from a pleading “an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.” However, motions to strike pursuant to Rule 12(f) are “generally viewed with disfavor because striking a portion of a pleading is a drastic remedy.” *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 247 (4th Cir. 2001). Therefore, “even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party.” *Clark v. Milam,* 152 F.R.D. 66, 70 (S.D.W.Va. 1993). In reviewing a motion to strike, “the court must view the pleading under attack in a light most favorable to the pleader.” *Id.* at 71.

Finally, Plaintiff has filed a cross motion for summary judgment. Summary judgment is appropriate when the

pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)(*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250(1986)).

**III. Analysis**

The Court first addresses Defendant's Motion for Judgment on the Pleadings before turning to Plaintiff's Motion to Strike and then to Plaintiff's Motion for Summary Judgment.

A. Defendant's Motion for Judgment on the Pleadings

Plaintiff brings suit under a common law theory of fraud and under the Virginia Consumer Protection Act ("VCPA"). (Compl. ¶ 1.) Because Plaintiff's claims both involve allegations of fraud, such claims must be pled with heightened particularity. *See, e.g., Fravel v. Ford Motor, Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013); *Myers v. Lee*, No. 1:10cv131 (AJT/JFA), 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) (citing *Nahigian*, 684 F. Supp. 2d at 741). Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). Specifically, there must be allegations of fraudulent misrepresentations of fact, which must include: "a false representation, or material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Hamilton v. Boddie-Noell Enter., Inc.*, No. 2:14CV00051, 2015 WL 751492, at *2 (W.D. Va. Feb. 23, 2015) (citations omitted).

1. Plaintiff's Claim for Fraud

Plaintiff alleges that he was fraudulently induced into purchasing the condominium by the Defendant's statements that the condominiums would be of "airport quality" and that the condominiums were "luxury" or "luxurious". (Pl.'s Opp'n. [Dkt. 14] at 1; Compl. ¶¶ 46, 48.) Defendant argues that the words "airport quality" and "luxurious" are mere puffery, too indefinite to be considered misrepresentations of fact.

To state a cause of action for either actual or constructive fraud, a plaintiff must allege at least that there has been a false misrepresentation of a material fact, that the injured party relied upon by this misrepresentation, and that the injured party was damaged as a result of this reliance. *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 557-58 (1998)(*See also State Farm Mut. Auto Ins. Co. v. Remley*, 270 Va. 209, 219-20)). To state a cause of action for fraudulent inducement of contract, "a plaintiff must

allege that the defendant made misrepresentations that were positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E.D.Va. 2009)(citations and internal quotation marks omitted). In order to state a cause of action for any of these varieties of fraud, a plaintiff must allege the misrepresentation of an existing fact rather than the expression of an opinion. "The mere expression of an opinion, however strong and positive the language may be, is no fraud." *Yusefovsky v. St. John's Wood Apartments*, 261 Va. 97, 110-11 (2001)(*quoting Saxby v. Southern Land Co.*, 109 Va. 196, 198 (1909)). On determining whether a particular statement is a matter of fact or opinion, the Supreme Court of Virginia has offered the following guidance:

> We have not, however, established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact. Rather each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances.

*Mortarino v. Consultant Eng'g. Servs., Inc.*, 251 Va. 289, 293 (1996)(internal quotation marks and citations omitted). It is settled, however, that "[c]ommendatory statements, trade talk,

or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion which cannot rightfully be relied upon." *Tate v. Colony House Builders*, 257 Va. 78, 84 (1999).

Generally, when a statement involves absolutes or objectively provable (or falsifiable) claims, courts have held the statement to be a representation of fact. *See Yusefovsky v. St. John's Wood Apartments* 261 Va. 97 (2001)(holding that statements that "the development was crime free, that police officers lived there, and that police vehicles patrolled the development" were actionable statements of fact); *Tate v. Colony House Builders*, *Inc.*, 257 Va. 78, 83-84 (1999)(holding that a statement that "the new dwelling house was free from structural defects" was an actionable statement of fact). However, when a statement has involved only subjective value judgments, the statement has generally been held to be an opinion or puffery. *See Henning v. Kyle*, 190 Va. 247 (1949) (holding that statements that a house "was a substantial, well-built house. . . that it was easy to heat and that [the buyer] wouldn't have to worry about a thing, all [the buyer] would have to do was move in, that it was in good repair in every way. . . it was in excellent condition and it was a substantial, well-built house" were *not* statements of fact, but rather expressions of opinion by the seller); *Lambert v. Downtown Garage*, 262 Va. 707 (holding that

statements that a previously repaired car was in "excellent condition" and had never been "seriously damaged" were non-actionable sales talk). What one person considers substantial or serious is often considered flimsy or minimal by another. In short, where a statement about the quality of a good cannot be reduced to a definable, legally cognizable standard, the statement will likely be an opinion rather than a statement of fact.

Here, Plaintiff argues that Pulte misrepresented a fact when its agent assured him that the soundproofing in the condominiums built on Route 1 would be of "airport quality" and that the apartments would be "luxurious". (Pl.'s Opp'n. at 8, 12.) The representation of a condominium as "luxury" or "luxurious" is classic puffery, and is therefore not an actionable misrepresentation of fact. *See Gricco v. Carver Boat Corp., LLC*, No. CIV. JFM-04-1854, 2005 WL 3448038, at *3 (D.Md. Dec. 15, 2005) *aff'd sub nom. Gricco v. Carver Boat Corp.*, 228 F. App'x 347 (4th Cir. 2007); *Demarco v. Avalonbay Communities, Inc.*, No. CV 15-628 (JLL), 2015 WL 6737025, at *4 (D.N.J. Nov. 3, 2015). The statement that the soundproofing on the condominiums would be of "airport quality" is less clear cut. Defendant argues that "airport quality" is not a meaningful standard in residential soundproofing, and notes that Plaintiff has conceded in his complaint that the level of soundproofing in

his house meets the applicable housing code requirements. (Def.'s Mem. in Supp. [Dkt. 10] at 9.)

As support for its position that "airport quality" soundproofing is not a meaningful standard but an unfalsifiable opinion, Defendant points to language in the sales contract signed by Plaintiff explicitly stating that "[w]hile the Home is built to meet or exceed all applicable regulations regarding sound and vibration transmission, condominium living is more susceptible to the transmission of noise and vibration from adjoining units." (Def.'s Ex. B [Dkt. 10-2] ¶ 29.) The contract further states, "Seller is required to construct units within the Condominium that comply with the minimum requirements of the applicable building code for sound transmission. . . . However, those standards do not require that units be soundproof, and they are not." (Def.'s Ex. C [Dkt. 10-3] ¶ 19.) Finally, the contract states "[t]he Home is located near transportation facilities including Reagan National Airport, active railroad tracks *and major roadways.* As a result the Home is subject to aircraft over flights, the noise generated by aircraft over flights, *and the noise generated by the nearby transportation facilities*." (Def.'s Ex. A [Dkt. 10-1] ¶ 20.) Defendant argues, and the Court agrees, that the definite promises in the written contract are the only statements of fact made by the Defendant or its agents regarding the standard of

the soundproofing in Plaintiff's condominium. (Def.'s Mem. in Supp. at 6.) Plaintiff concedes in his Complaint that the results of an objective sound test performed on his unit "were that the unit had passed" and the unit is therefore in compliance with the applicable building codes for sound transmission. (Compl. ¶ 42.) Nowhere in Plaintiff's Complaint does he allege that his unit does not comply with the applicable building code standard for sound transmission.

The written contract signed by Plaintiff the same day as the Defendant's alleged misrepresentation sheds light on "the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." *Mortarino*, 251 Va. 289 at 293 (internal quotation marks and citations omitted). While the phrase "airport quality" may bring to mind a certain level of soundproofing, it is ultimately no more definite than "excellent quality" or "luxurious quality". In light of the written contract's explicit promises regarding the level of and limits on the soundproofing provided in the condominiums, it is clear that the "airport quality" statement was puffery. While the language used to express the opinion is more creative than merely stating that the soundproofing would be excellent, "the mere expression of an opinion, however strong and positive the language may be, is no fraud." *Yusefovsky*, 261 Va. at 110.

Plaintiff does not allege a misrepresentation of fact and therefore fails to state a cause of action for fraud.

2. Plaintiff's VCPA Claim

Plaintiff's claim for a violation of the VCPA is similarly doomed. The Supreme Court of Virginia recently held that a plaintiff need not allege a common law fraud to state a cause of action under the VCPA, specifically holding that "[t]he VCPA clearly does not require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive." *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260 (2014). However, *Owens* does nothing to alter the VCPA's requirement that a plaintiff must "allege a fraudulent misrepresentation of fact." *Hamilton v. Boddie-Noell Enter., Inc.*, No. 2:14CV00051, 2015 WL 751492, at *2 (W.D. Va. Feb. 23, 2015) (quoting *Nationwide Mut. Ins. Co. v. Overlook, LLC,* 785 F. Supp.2d 502, 533 (E.D.Va. 2011)). As it would considerably expand the scope of liability if puffery and opinions were considered actionable misrepresentations under the VCPA, this Court will not read that intent into the Supreme Court of Virginia's opinion in *Owens.* Accordingly, as Plaintiff alleges only puffery and fails to allege a misrepresentation of fact, he fails to properly state a cause of action under the VCPA. Because Plaintiff has failed to allege a misrepresentation of fact by Defendant, he has failed to state a

cause of action under either fraud or the VCPA and the Court grants Defendant's Motion for Judgment on the Pleadings.

B. Plaintiff's Motion to Strike

Plaintiff requests that the Court strike paragraphs 55 and 57 of the Defendant's Answer. (Pl.'s Mem. in Supp. of Mot. to Strike [Dkt. 6] at 2.) In paragraph 55 of their Answer, Defendant raises the affirmative defense of the statute of limitations, and in paragraph 57 of their Answer, Defendant raises the existence of a contractual exclusive remedy provision.

With respect to paragraph 55, raising the statute of limitations, Plaintiff argues that it is clear from the facts admitted in Defendant's Answer that the cause of action did not accrue until September 24, 2013. (Pl.'s Mem. in Supp. of Mot. to Strike at 4.) As this action was initially filed on September 23, 2015, that would bring the action within the statute of limitations by one day. Defendant responds by arguing that Plaintiffs claim may in fact have accrued prior to September 24, 2013, the day Plaintiff moved into his condominium. (Def.'s Opp'n. to Mot. to Strike at 2.) The Court need not evaluate the merits of either party's arguments regarding the applicability of the statute of limitations in order to resolve Plaintiff's Motion to Strike. It is sufficient, at this point, to note that Plaintiff has failed to

demonstrate how he is prejudiced by the Defendant's raising a potential statute of limitations defense in their Answer. *See Clark* 152 F.R.D. at 70 (S.D.W.Va. 1993)("even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party.").

With respect to paragraph 57, raising the existence of a contractual exclusive remedy provision, Plaintiff argues that as Defendant had previously "agreed to waive any/all application of the arbitration clause in the sales agreement as it applies to this dispute," via telephone conversation and e-mail, Defendant should be prevented from raising the existence of a contractual exclusive remedy provision. (Pl.'s Mem. in Supp. of Mot. to Strike at 4.) Defendant responds by pointing out that while the parties have waived application of the contract's arbitration clause, the exclusive remedy clause raised in paragraph 57 of the Answer is an entirely separate clause. (Def.'s Opp'n. to Mot. to Strike at 2.) As Defendant points out, while the arbitration clause dealt with the appropriate venue for resolution of any disputes, the exclusive remedy clause "collapses the universe of plaintiff's potential remedies . . . down into a smaller list of pre-agreed remedies." (*Id.*) Plaintiff does not claim that Defendant has waived the application of this separate exclusive remedy clause. Because

the Plaintiff has not shown how the presence of either paragraph 55 or paragraph 57 of Defendant's Answer would prejudice him in any way and motions to dismiss pursuant to Rule 12(f) are generally viewed with disfavor, the court denies Plaintiffs motion to strike.

C. Plaintiff's Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods Ltd.*, 302 F.3d at 244 (*quoting Anderson,* 477 U.S. at 250). In fact, in his own brief in support of his Motion for Summary Judgment, Plaintiff declares, "[a]s a general rule, summary judgment is not appropriate prior to the completion of discovery." (Pl.'s Mem. in Supp. of Mot. for Summary Judgment [Dkt. 16] at 7.)(*citing Anderson*, 477 U.S. at 250.) The Court agrees, and denies Plaintiff's Motion for Summary Judgment.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss, denies Plaintiff's Motion to

Strike, and denies Plaintiff's Motion for Summary Judgment. An appropriate Order shall issue.

/s/

December 4, 2015 James C. Cacheris
Alexandria, Virginia UNITED STATES DISTRICT COURT JUDGE